[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10862

Non-Argument Calendar

_____

DEON JOHNSTON,

Plaintiff-Appellant,

*versus*

DEPUTY SEAN M CARLSON,
DEPUTY MELANIE STICKNEY,
DEPUTY JOSE P MALDONADO,
Individually/in their personal capacities,

Defendants-Appellees,

NICOLE JOHNSTON,

2                    Opinion of the Court                    24-10862

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-00617-SDM-AEP

_____

Before NEWSOM, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Deon Johnston appeals the district court's dismissal of his complaint. He sued Pinellas County Sheriff's Deputies Sean Carlson, Melanie Stickney, and Jose Maldonado alleging two counts of false arrest under 42 U.S.C. section 1983. The district court determined that the deputies were entitled to qualified immunity because they had arguable probable cause to arrest Johnston. After careful consideration, we affirm.

## FACTUAL BACKGROUND

For the purposes of this appeal, we accept the factual allegations of Johnston's second amended complaint as true and construe them in the light most favorable to him. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

In November 2022, Nicole Johnston ("Nicole")—Johnston's wife at the time—obtained a domestic violence injunction against him. The couple were amid divorce proceedings, and the

24-10862                Opinion of the Court                3

injunction prohibited Johnston from (1) contacting Nicole, (2) approaching within 500 feet of her residence, and (3) knowingly going within 100 feet of her vehicle. The injunction did not bar Johnston from visiting any other location or specify that he must remain a certain physical distance from Nicole.

On December 4, 2022, Johnston attended a Sunday morning service at Harborside Christian Church, both his and Nicole's longtime place of worship. Johnston did not see Nicole or her vehicle when he arrived at the church, and he took a seat near the front of the sanctuary. Sometime later, Nicole arrived at the church, saw Johnston, and called the police. Deputy Carlson arrived at the scene, and Nicole presented him with a copy of the injunction. Deputy Carlson read the injunction and informed Nicole that it did not prohibit Johnston from attending the church. Nicole protested, arguing that the Pasco County Sheriff's Office had told her that the injunction prohibited Johnston from coming within 500 feet of her. Deputy Carlson discussed the situation with his partner, Deputy Stickney, who had not read the injunction herself. In doing so he incorrectly stated that the injunction prohibited Johnston from coming within 500 feet of Nicole. The two deputies then arrested Johnston for willfully violating the injunction by "showing up and attending [a] church service at the same time" as Nicole, "despite knowing" that she would probably be there. Johnston spent the night in jail and was released the next day. Two weeks later, the state dropped the charge against him, concluding that the facts and circumstances did not warrant prosecution.

On February 19, 2023, Johnston attended Harborside Christian Church again. As before, Johnston did not see Nicole or her vehicle when he arrived. He entered the church and took a seat near the front of the sanctuary. A few minutes later, Nicole arrived, saw Johnston, and called the police. Deputy Maldonado answered the call, read the injunction, and arrested Johnston. Johnston spent a second night in jail, but two weeks later, the state again dropped the charge against him.

## PROCEDURAL HISTORY

Johnston sued Deputies Carlson, Stickney, and Maldonado, alleging false arrest under 42 U.S.C. section 1983.[1] The deputies moved to dismiss Johnston's claims, but Johnston amended his complaint—rendering their motion moot. The deputies then renewed their motion against Johnston's amended complaint. They argued that the complaint was a shotgun pleading and that they were entitled to qualified immunity.

The district court granted the deputies' motion to dismiss. It found that Johnston's amended complaint was a shotgun pleading, but regardless, the deputies were entitled to qualified immunity because they had arguable probable cause to arrest Johnston. Specifically, the district court relied on Florida Statute section 741.31(4)(a). That provision makes it a misdemeanor to willingly

---

[1] Initially, Johnston also sued Nicole for malicious prosecution. However, the parties settled out of court, and Johnston voluntarily dismissed Nicole from the lawsuit.

violate a domestic violence injunction by, among other things, "[g]oing to, or being within 500 feet of, the petitioner's residence, school, place of employment, or a specified place frequented regularly by the petitioner and any named family or household member." Fla. Stat. § 741.31(4)(a)(2). The district court noted that the parties offered competing interpretations of the statute.

The deputies argued that section 741.31(4)(a)(2) barred Johnston from attending the church because he knew that it was a place frequented by Nicole. Johnston, on the other hand, contended that the word "specified" in the statute limited the prohibition to the places named in the injunction order, and that the order did not mention the church. The district court reasoned that Johnston probably had the better reading of the statute, but it explained that the deputies only needed to show arguable probable cause to obtain qualified immunity. It found that the deputies had done so and dismissed Johnston's amended complaint. However, the district court gave Johnston the opportunity to try once more.

Johnston filed a second amended complaint, and the deputies responded with a third motion to dismiss. The district court determined that Johnston's second amended complaint alleged no new facts that altered the legal analysis of its prior order. The district court noted that while Johnston's legal argument may be correct, "the deputies' mistake" in arresting him "was at least reasonably arguable." It reasoned that while Johnston's new allegations supported his contention that he did not violate the injunction or the criminal statute, they did not show that the deputies lacked

arguable probable cause to arrest him. The district court found that the deputies were entitled to qualified immunity and dismissed Johnston's second amended complaint with prejudice. Johnston timely appealed.

## STANDARD OF REVIEW

We review de novo both a district court's decision to grant a motion to dismiss and its decision to apply qualified immunity at the motion to dismiss stage. *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023).

## DISCUSSION

On appeal, Johnston argues that the district court erred in determining that the deputies were entitled to qualified immunity. We disagree.

Qualified immunity protects police officers from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To receive qualified immunity, an officer must first establish that he was acting within his discretionary authority when the alleged wrongdoing occurred. *See Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023). If he does so, the burden shifts to the plaintiff to show that qualified immunity should not apply. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). A plaintiff can do this by demonstrating that (1) the officer's conduct violated a constitutionally protected right, and (2) the right was clearly established at the time

of the misconduct. *Garcia*, 75 F.4th at 1185. "Clearly established" means that the state of the law was plain enough "that every reasonable official would understand what he [was] doing [was] unlawful." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).

It is clearly established that an "officer violates a person's Fourth Amendment right against unreasonable seizures if" he makes an arrest without probable cause. *Garcia*, 75 F.4th at 1186. Probable cause exists where generally trustworthy information is sufficient to indicate to a reasonable person that criminal activity is afoot. *Id.* We discern the presence of probable cause by looking to whether a reasonable officer in the situation of the defendant could have concluded that there was a substantial chance of criminal activity. *See Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022).

But in the context of a federal false arrest claim, an officer does not need to show that he had *actual* probable cause to obtain qualified immunity; he only needs to show that he had *arguable* probable cause. *See Garcia*, 75 F.4th at 1186; *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."). "An officer has arguable probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *Garcia*, 75 F.4th at 1186 (quoting *Wesby*, 583 U.S. at 68). Put another way, "the arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry in any other qualified immunity case. Unless the law 'makes it obvious

that the officer's acts violated the plaintiff's rights,' the officer has qualified immunity." *Id.* at 1187 (quoting *Washington*, 25 F.4th at 903) (alteration adopted).

In this case, neither party disputes that the deputies were acting within their discretionary authority when they arrested Johnston. Thus, to succeed on appeal, Johnston must show that the deputies were not entitled to qualified immunity. *Keating*, 598 F.3d at 762. In other words, he must show that the deputies did not have at least arguable probable cause to arrest him. He fails to carry his burden.

Johnston's arguments focus more on whether the deputies' actions were legally correct than whether they had arguable probable cause to arrest him. He contends that his reading of section 741.31 is the appropriate one, and that the terms of the injunction did not prohibit him from attending the church. But the fact that the deputies were mistaken does not mean that they lacked arguable probable cause to place Johnston under arrest.

As the district court correctly observed, officers can be reasonably mistaken about the law and still be entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (citation and internal quotation marks omitted)). Police officers are often forced to make quick decisions, and sometimes the application of a statute is unclear. *See Heien v. North Carolina*, 574 U.S. 54, 67 (2014) ("A law

prohibiting 'vehicles' in the park either covers Segways or not, but an officer will nevertheless have to make a quick decision on the law the first time one whizzes by." (citation omitted)). So long as an officer's mistake is reasonable, arguable probable cause exists, and he does not lose the protection of qualified immunity. *See Washington v. Rivera*, 939 F.3d 1239, 1249 (11th Cir. 2019) (holding that an officer who failed to report that plaintiff had paid a fine—which led to the plaintiff's arrest—had made "a reasonable mistake in the legitimate performance of her duties" and was entitled to qualified immunity); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558 (11th Cir. 1993) (holding that an officer's reasonable mistake in estimating the number of patrons in a restaurant established arguable probable cause for an arrest based off a building code violation); *Rodriguez v. Farrell*, 280 F.3d 1341, 1350 (11th Cir. 2002) (holding that officers' mistaken arrest of plaintiff who shared the same name of—and had a similar appearance to—a suspect was "arguably reasonable" and that the officers were entitled to qualified immunity). Here, the factual allegations show that the deputies' mistake—believing that they had probable cause to arrest Johnston based on the injunction and statute—was a reasonable one.

For the first arrest, Deputies Carlson and Stickney responded to a call that Johnston was violating a domestic violence injunction. They arrived and found Johnston—who had been found by a Florida court to meet the requirements for a domestic violence injunction—sitting in the same room as the woman who sought the injunction, at a place he should have reasonably suspected she would be. Nicole presented Deputy Carlson with a

copy of a twelve-page injunction, which stated in bold that John-ston should have "No Contact" with her, unless otherwise pro-vided. Initially concerned about the applicability of the injunction, Deputy Carlson discussed the situation with his partner, Deputy Stickney. After discussing the situation, the deputies arrested John-ston under section 741.31 for willfully violating the injunction.[2]

The second arrest, involving Deputy Maldonado, took place a few weeks later, but its facts are essentially the same. Deputy Maldonado responded to a call that Johnston was violating a do-mestic violence injunction. He arrived, was presented with the in-junction, found Johnston in the same room as Nicole, and arrested Johnston under section 741.31 for willfully violating the injunction.

While up for debate, we cannot say that the deputies' inter-pretation of the injunction and the statute was objectively unrea-sonable. As the district court explained, law enforcement officers are often called upon to make quick judgments, and usually do not have the luxury of pondering the applicability of statutes in a calm environment. *See Hutton v. Strickland*, 919 F.2d 1531, 1541 (11th Cir. 1990) ("In making probable cause decisions, law enforcement officers are not charged with knowing legal technicalities and nu-ances, but with 'the factual and practical considerations of every-day life on which reasonable and prudent men, not legal

---

[2] Johnston argues that the deputies did not rely on section 741.31 in making the arrest, but this assertion is contradicted by the record as both Deputy Carl-son's and Deputy Maldonado's respective reports included the statute as the basis for their arrests.

technicians, act.'" (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949))).

When the deputies arrived at the church, they were confronted with (1) an injunction prohibiting Johnston from having contact with Nicole, and (2) Johnston and Nicole together in the same room. Between the injunction's "No Contact" provision, and the unintuitive language of section 741.31(4)(a), the deputies could have reasonably concluded that they had probable cause to arrest Johnston. *See Garcia*, 75 F.4th at 1186 ("An officer has arguable probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" (quoting *Wesby*, 583 U.S. at 68)). As the district court observed, this decision is supported by the fact that three different deputies, two on one occasion, and a third on another, made the same mistake of law.

Thus, like the district court, we conclude that the deputies had arguable probable cause and are entitled to qualified immunity.

## CONCLUSION

The deputies are entitled to qualified immunity and the district court did not err in dismissing Johnston's complaint.

**AFFIRMED**.